AMANDA GERWIG, *etc.*

*v.*

THE BALTIMORE AND OHIO RAILROAD COMPANY, *a corporation*

(No. 10745)

Submitted September 7, 1955.   Decided October 4, 1955.

*E. Oldham Berry,* for relators.

*Steptoe & Johnson, Stanley C. Morris, W. F. Wunschel, Eugene G. Eason,* for respondent.

GIVEN, JUDGE:

In this original proceeding in mandamus petitioner, Amanda Gerwig, prays a peremptory writ requiring the defendant, the Baltimore and Ohio Railroad Company, a Corporation, "to reinstitute, maintain and operate reasonable bus service" within certain defined territory in West

Virginia. The defendant filed a demurrer to the petition herein, and answered. The petitioner filed a demurrer to the answer. The case was submitted for decision upon these pleadings, briefs and oral arguments.

In so far as material here, the allegations of the petition are to the effect that the petitioner is a citizen, resident and taxpayer of Braxton County, West Virginia, within the territory involved; that she prosecutes this action on behalf of herself and all other citizens and residents of that territory; that the defendant is a corporation created and existing under the laws of Maryland and is licensed to do business in West Virginia; that the West Virginia Transportation Company is a corporation created and existing under the laws of West Virginia, and that prior to December 20, 1954, it "was a wholly owned subsidiary" of defendant; that on the 20th day of December, 1954, defendant sold all of the outstanding capital stock of the West Virginia Transportation Company to Carl A. Boe for the sum of ten thousand dollars; that the purchase price was wholly inadequate; that the value of the assets of the West Virginia Transportation Company was, at the time of the sale of the stock, in excess of six hundred thousand dollars, "of which Sixty Five Thousand ($65,000) Dollars was net work capital"; that no request was made of the Public Service Commission of West Virginia for approval of the sale of such stock; that the West Virginia Transportation Company was caused to be organized by the defendant for the purpose of "operating a motor carrier affiliate of " defendant within such territory for the purpose of "minimization of the costs of conducting a passenger operation through substitution of the buses for trains"; that defendant repeatedly sought and obtained from the Public Service Commission of West Virginia permission to "curtail its passenger train operations" on the basis that its "passenger train service was not needed since reasonable and adequate bus service was furnished to the public by said subsidiary"; that by reason of the curtailment of its passenger train service it effected large economies in its operation "far in

excess of any purported and alleged losses that it may have sustained, or did sustain, in the operation of its subsidiary"; that on January 26, 1955, after the sale of its stock to Boe, the West Virginia Transportation Company petitioned the Public Service Commission of West Virginia for authority to suspend and curtail certain of its bus services; that the hearing on the petition has been concluded, but that no decision has been published; that on April 2, 1955, the West Virginia Transportation Company suspended all bus service, surrended its charter and was placed in "a liquidating receivership", and that on the 24th day of March, 1955, the Public Service Commission of West Virginia granted "temporary permission" to the Atlantic Greyhound Corporation "to operate over a portion of the routes served by the said subsidiary."

The answer admits as true certain formal allegations of the petition, denies others, and alleges facts to the effect that defendant is a Class 1 steam railroad company; that it is engaged in the transportation of passengers, freight, mail and express in interstate and intrastate commerce in West Virginia; that it has no "charter authority" to engage in transportation of passengers by motor vehicle, and holds no certificate of convenience and necessity from the Interstate Commerce Commission, or from the Public Service Commission of West Virginia, to engage in transportation of passengers by motor vehicle; that as of December 31, 1954, it "sold and delivered all of the issued and outstanding stock of West Virginia Transportation Company" to Carl A. Boe for an adequate consideration; that Boe was an experienced and competent motor bus operator; that on March 18, 1955, the West Virginia Transportation Company made application to the Public Service Commission of West Virginia for authority to sell certain of its routes to The Greyhound Corporation and to the Atlantic Greyhound Corporation; that such authority was granted March 29, 1955, and that pursuant to such authority the Atlantic Greyhound Corporation and The Greyhound Corporation are now operating the routes purchased by them from the West Vir-

ginia Transportation Company "in an efficient, safe and dependable manner"; that on April 2, 1955, the West Virginia Transportation Company, having been placed in a liquidating receivership, "discontinued the operation of all of its remaining bus routes", and surrendered its charter; that on May 2, 1955, the Public Service Commission of West Virginia entered an order directing the defendant to show cause why the intrastate West Virginia bus service theretofore furnished by the West Virginia Transportation Company should not be restored over the remaining routes held by the West Virginia Transportation Company at the time its operations were discontinued; that in "response to said order the Maryland and West Virginia Company, a corporation organized under the laws of the State of West Virginia, and a wholly owned subsidiary of respondent, made application to said Commission for a certificate of convenience and necessity to operate all of such remaining routes"; that by "orders of May 20 and June 10, 1955, the Public Service Commission of West Virginia granted to said Maryland and West Virginia Company temporary authority to operate all of said remaining intrastate West Virginia routes formerly operated by said West Virginia Transportation Company"; that the case wherein the orders of May 20 and June 10, 1955, were entered is still pending before the Public Service Commission of West Virginia; that "all of the motor bus service demanded by the relator * * * is now being rendered after extensive hearings held and pursuant to lawful orders issued by the Public Service Commission of West Virginia and the Interstate Commerce Commission; that the general convenience of the public in Braxton County and elsewhere in the State of West Virginia has thereby been adequately protected and subserved."

It seems to be conceded by petitioner, and must be considered as established by the pleadings, that the transportation of passengers by motor vehicle over the West Virginia routes formerly served by the West Virginia Transportation Company pursuant to its certificate of

convenience and necessity is now made available to petitioner and to the residents of the territory formerly served by the West Virginia Transportation Company, except as to certain routes discontinued under authority of the Public Service Commission. Some of the routes formerly operated by the West Virginia Transportation Company are now operated by the Atlantic Greyhound Corporation and The Greyhound Corporation, purchasers thereof, pursuant to orders of the Public Service Commission. As to such routes we do not understand petitioner to complain. Questions as to whether such sales or transfers should have been made were questions peculiarly for determination by the Public Service Commission. All other routes formerly operated by the West Virginia Transportation Company are now being operated by the Maryland and West Virginia Company, a wholly owned subsidiary of defendant, and there is no complaint that the service being furnished is not the equivalent of that furnished by the West Virginia Transportation Company. It is true, as contended by petitioner, that the Maryland and West Virginia Company is operating certain routes only under temporary authority of the Public Service Commission, but the authority sought by the Maryland and West Virginia Company was not merely temporary authority, and the question as to whether the authority sought by that company should be allowed is not, in the first instance, at least, one for this Court.

Petitioner contends, however, that the defendant is obligated to continue to furnish the bus transportation service previously furnished by it through its wholly owned subsidiary, the West Virginia Transportation Company, and that it can not relieve itself of that obligation by sale and transfer of all of the stock of the subsidiary, apparently relying upon the holding in the case of *Nicely* v. *Public Service Commission,* 129 W. Va. 680, 41 S. E. 2d 297. We think the questions raised by the contention can not be reached in this proceeding. Assuming, without deciding, that defendant "has a unique obligation and responsibility to serve its public", as contended by the petitioner, it is clear that it is now furnish-

ing such service, through another wholly owned subsidiary, under the authority of the Public Service Commission. That being true, there is nothing further of which petitioner can complain in this proceeding. Any questions as to rights of petitioner raised by her petition have become moot.

In *Hall* v. *Staunton,* 55 W. Va. 684, 47 S. E. 265, this Court held: "The extraordinary writ of *mandamus* will never be issued in any case where it is unnecessary, or where, if used, it would prove unavailing, fruitless and nugatory. The court will not compel the doing of a vain thing. A mere abstract right, unattended by any substantial benefit to the party asking *mandamus,* will not be enforced by the writ." See *State ex rel. First Huntington National Bank* v. *State Road Commission,* 112 W. Va. 341, 164 S. E. 289; *Pardue* v. *County Court of Lincoln County,* 105 W. Va. 235, 141 S. E. 874; *State ex rel. Ryan* v. *Miller,* 82 W. Va. 490, 96 S. E. 791; *Whyel* v. *Jane Lew Coal & Coke Co.,* 67 W. Va. 651, 69 S. E. 192; *Hawkins* v. *Bare & Carter,* 63 W. Va. 431, 60 S. E. 391. "The writ of mandamus will not issue to compel the performance of a duty already discharged." Point 1, Syllabus, *Monongalia Improvement Company* v. *Morris,* 106 W. Va. 243, 145 S. E. 387. "When circumstances occur pending the trial of an action which render its further prosecution barren of practical results, it should be dismissed." *Commercial Credit Co.* v. *Altizer,* 107 W. Va. 365, 148 S. E. 322.

The rule heretofore issued herein is discharged, and the peremptory writ of mandamus prayed for is denied.

*Writ denied.*