WILLIAM DELARDAS, *who sues, etc.*

*v.*

MORGANTOWN WATER COMMISSION, *et al.*

(No. 12250A)

Submitted April 29, 1964.      Decided July 17, 1964.

*Stanley R. Cox, Jr.,* for plaintiff in error.

*Jesse M. Jaco, Mike Magro, Jr.,* for defendants in error.

HAYMOND, PRESIDENT:

This is a writ of error to the final judgment of the Circuit Court of Monongalia County in a mandamus proceeding instituted in that court on March 16, 1961, in which the petitioner, William Delardas, who sues individually and in behalf of the Morgantown Citizens League, seeks a writ to compel the defendants, the City of Morgantown and the members of its common council, to hold a special election on the question of sewer fees as required by an ordinance of that city. The petitioner also seeks an order adjudging the ordinance to be null and void and an order prohibiting the defendant Morgantown Water Commission from attempting to collect the sewer fees provided by the ordinance.

This case has previously been before this Court upon writ of error awarded in June 1963 which was dismissed as improvidently awarded for the reason that the order to which the prior writ was awarded was not a final or appealable judgment. *Delardas* v. *Morgantown Water Commission,* 148 W. Va. 318, 134 S. E. 2d 889.

After the dismissal of the former writ of error as improvidently awarded, the proceeding was dismissed by a final judgment of the circuit court entered March 5, 1964. To that judgment this Court granted this writ of error and supersedeas upon the application of the petitioner William Delardas on March 16, 1964.

By stipulation of the attorneys representing the respective parties and by leave of this Court the printed record considered upon the first writ of error, which now includes the final dismissal order of the circuit court, is adopted as the official record before this Court, and this proceeding was submitted for decision at a former day of this term upon the foregoing stipulation and record and the original briefs previously filed by the attorneys in behalf of the respective parties.

In January 1960 the City of Morgantown filed an application with the Public Service Commission of West Virginia for a certificate of convenience and necessity to operate and maintain a municipal sewer system for the collection and disposal of sewage within and also outside the corporate limits of the city, and for authority to establish service rates and charges on the basis of 50% of each water bill for service within the city and on the basis of 80% of each water bill for service outside the city; and by order of the commission of January 18, 1960 the matter was set for hearing on February 26, 1960, in Charleston. The applicant was required to give notice of the filing of its application which was done in compliance with the order of the commission.

Pending a hearing in the proceeding before the public service commission, and apparently at its direction, the City of Morgantown, on September 20, 1960, enacted an ordinance relating to maintenance and improvement of a sewer system and the establishment and the collection of the rates and charges for sewerage service. The ordinance set forth in detail a schedule of rates and charges based on the amount of water sold to consumers, and contained a provision that it should become effective unless written protests were made and filed by 10% of the registered voters,

which was the minimum percentage then required by the statute, within 15 days from the last publication of the ordinance. The ordinance was duly published and a petition in opposition to the ordinance and demanding a referendum, signed by the then required percentage of voters, which has since been increased from 10% to 30% by amendment of the pertinent statute effective March 9, 1961 but which does not here apply, was filed within the prescribed period of time. In November 1960 certified copies of the ordinance were filed with the public service commission and on December 30, 1960, the commission entered a final order which granted the requested certificate of convenience and necessity, required the city to file a tariff prescribing the rates and charges as specified in the ordinance, and approved and authorized the city to put in effect, on and after the date of the order of the commission, the rates and charges for sewerage service contained in the schedule set forth in the ordinance. No review to modify, reverse or set aside the order of the commission was requested and that order, which after thirty days from its entry, is not subject to the judicial review provided by Section 1, Article 5, Chapter 24, Code, 1931, was in force and effect when this proceeding was instituted. After the entry of the order by the commission the city decided not to hold an election as provided by the ordinance; and on March 16, 1961, the petitioner instituted this mandamus proceeding in the Circuit Court of Monongalia County.

The circuit court sustained demurrers to an original petition and an amended petition with leave to file a second amended and supplemental petition, which was filed by order entered April 27, 1962. By order entered July 2, 1962, the motion of the defendants the City of Morgantown and the members of its council, to strike the exhibits filed with the second amended and supplemental petition, consisting of copies of the municipal charter, the final order of the public service commission, a notice, and the ordinance, was sustained and, by order entered February 28, 1963, the demurrer of the same defendants to the second amended and supplemental petition was also sustained but there was no request for leave to amend the petition. By its final judg-

ment entered March 5, 1964, this proceeding was dismissed and retired from the docket of the circuit court.

The petitioner asserts that the controlling questions for decision upon this writ of error are (1) whether the public service commission has authority to enter an order approving a rate ordinance in the absence of an election validating the ordinance as provided by Section 20, Article 4, Chapter 8, Code, 1931, as amended; and (2) whether, after approval by the public service commission of the rates and charges specified in the ordinance, the voters of the municipality may compel compliance with the election requirement of the foregoing statute.

The statute upon which the petitioner relies, Section 20, Article 4, Chapter 8, Code, 1931, as amended, in effect when the ordinance was enacted on September 20, 1960 and the order of the commission was entered on December 30, 1960, and before its amendment by Chapter 99, Acts of the Legislature, 1961, Regular Session, to the extent here pertinent, contained these provisions: "The governing authority of every municipal corporation that furnishes any essential or special municipal service, including * * * , sewerage and sewage disposal, and the collection and disposal of garbage, ashes or other waste materials, may by ordinance provide for the continuance, maintenance, installation or improvement of such service, may make reasonable regulations with respect thereto, may impose upon the users of such service reasonable rates, fees and charges to be collected in the same manner as municipal taxes are collected or in some other manner specified in the ordinance, * * * . Provided, however, that any ordinance enacted under the provisions of this section shall be published at least once a week for two successive weeks in two newspapers published in such municipality, * * * , and in the event ten per cent of the registered voters by written petition duly signed by them and filed with the municipal authority within fifteen days after the expiration of such publishing or posting protest against such ordinance, the ordinance shall not become effective until it shall be ratified by a majority of the votes cast by the duly qualified voters of such municipality at an

election duly and regularly held as provided by the laws and ordinances of the municipality and the result of such election ascertained and declared." The amendment by Chapter 99, Acts of the Legislature, 1961, Regular Session, changed the percentage of the registered voters from 10% to 30%, but that amendment, not being effective until after the passage of the ordinance, does not apply to any question involved in this proceeding.

Section 1, Article 1, Chapter 24, Code, 1931, in part, declares that "Except where a different meaning clearly appears from the context, the words 'public utility' when used in this chapter shall mean and include any person or persons, or association of persons, however associated, whether incorporated or not, including municipalities, engaged in any business, whether herein enumerated or not, which is, or shall hereafter be held to be, a public service." These provisions of Section 1, which expressly define the term "public utility" and state that it includes a municipality, place a municipality, to the extent that it engages in conducting a public utility in this State, under the supervision of and subject it to regulation by the public service commission. *State ex rel. The City of Wheeling* v. *Renick,* 145 W. Va. 640, 116 S. E. 2d 763; *Village of Bridgeport, Ohio* v. *Public Service Commission,* 125 W. Va. 342, 24 S. E. 2d 285. It is clear that a municipal sewer system is devoted to the service of the public and that it is constructed and operated and maintained for that purpose; and because of the public character of the service which it furnishes the sewer system owned and operated by the City of Morgantown is a public utility within the meaning of the above quoted provisions of Section 1 of the statute.

Section 1, Article 2, Chapter 24, Code, 1931, as amended, expressly provides that "The jurisdiction of the commission shall extend to all public utilities in this State, and shall include any utility engaged in any of the following public services: * * *, sewer systems servicing twenty-five or more persons or firms other than the owner of the sewer systems; * * *."

Section 3, Article 2, Chapter 24, Code, 1931, provides, in

part, that "The commission shall have power to enforce, originate, establish, change and promulgate tariffs, rates, joint rates, tolls and schedules for all public utilities except carriers by vehicles over streets and roads, including municipalities supplying gas, electricity or water."

Section 1, Article 3, Chapter 24, Code, 1931, with respect to every public utility subject to that chapter of the Code, provides that "All charges, tolls and rates shall be just and reasonable, and no change shall be made in any tariffs, rates, joint rates, tolls, schedules or classifications" except as provided in the statute.

Sections 1 and 2, Article 13, Chapter 16, Code, 1931, as amended, authorize and empower a municipal corporation in this State to own, construct, equip, operate and maintain sewer systems, and to place the construction, operation and management of such systems under the supervision and control of a sanitary board appointed by the governing body of the municipal corporation; and Section 16 of the same article and chapter contains, among others, these provisions:

"The governing body shall have power, and it shall be its duty, by ordinance, to establish and maintain just and equitable rates or charges for the use of and the service rendered by such works, to be paid by the owner of each and every lot, parcel of real estate or building that is connected with and uses such works by or through any part of the sewerage system of the municipality, or that in any way uses or is served by such works, and may change and readjust such rates or charges from time to time."

As the foregoing provisions of Section 20, Article 4, Chapter 8, Code, 1931, as amended, the foregoing provisions of Articles 1, 2 and 3, Chapter 24, Code, 1931, as amended, and the foregoing provisions of Sections 1, 2 and 16, Article 13, Chapter 16, Code, 1931, as amended, dealing with municipally owned and operated sewer systems, relate to the same subject they should and will be read and construed together. The principle is well established by the decisions of this Court that statutes relating to the same subject, regardless of the time of their enactment and whether the

later statute refers to the former statute, are to be read and construed together and considered as a single statute the parts of which had been enacted at the same time. *State ex rel. The City of Wheeling v. Renick*, 145 W. Va. 640, 116 S. E. 2d 763; *State by State Road Commission v. Professional Realty Company*, 144 W. Va. 652, 110 S. E. 2d 616; *The Chesapeake and Potomac Telephone Company of West Virginia v. The City of Morgantown*, 144 W. Va. 149, 107 S. E. 2d 489; *State ex rel. Graney v. Sims*, 144 W. Va. 72, 105 S. E. 2d 886; *State ex rel. Pinson v. Varney*, 142 W. Va. 105, 96 S. E. 2d 72; *State ex rel. Revercomb v. O'Brien*, 141 W. Va. 662, 91 S. E. 2d 865; *State ex rel. Schroath v. Condry*, 139 W. Va. 827, 83 S. E. 2d 470; *Vest v. Cobb*, 138 W. Va. 660, 76 S. E. 2d 885; *State v. Epperly*, 135 W. Va. 877, 65 S. E. 2d 488; *White v. Morton*, 114 W. Va. 29, 171 S. E. 762; *State v. Hoult*, 113 W. Va. 587, 169 S. E. 241; *State v. Reed*, 107 W. Va. 563, 149 S. E. 669; *Hays v. Harris*, 73 W. Va. 17, 80 S. E. 827; *Wellsburg and State Line Railroad Company v. Pan Handle Traction Company*, 56 W. Va. 18, 48 S. E. 746; *Daniel v. Simms*, 49 W. Va. 554, 39 S. E. 690; *Forqueran v. Donnally*, 7 W. Va. 114. Under the rule of statutory construction enunciated in the cases just cited it is clear that by the enactment of the provisions of Section 20, Article 4, Chapter 8, Code, 1931, as amended, and reenacted by Chapter 99, Acts of the Legislature, 1961, Regular Session, the Legislature did not deprive or intend to deprive the public service commission of its jurisdiction over municipally owned sewer systems or to limit or impair its exercise of such jurisdiction.

Though the provision of Section 20, Article 4, Chapter 8, Code, 1931, as amended, that a municipal corporation may by ordinance provide for the maintenance or improvement of its municipal sewerage and sewage disposal service and impose upon the users of such service reasonable rates, fees and charges, and the provision that any ordinance enacted for that purpose shall not become effective until it shall be ratified by a majority of the votes cast by the duly qualified voters of the municipality at an election held for that purpose, afford an opportunity to the voters of a municipality to express their views with respect to such rates and charges for the consideration of the public service commission as a

recommendation for or as a protest against such rates and charges and provide a method of preventing the imposition of such rates and charges by the municipality in the absence of action by the commission, they can not operate to control or supersede, or have the effect of controlling or superseding, an order entered by the commission establishing and promulgating such rates and charges in a proceeding before the commission for that purpose.

This Court has consistently held that the policy of the law of this State is that all public utilities, whether publicly or privately owned, shall be subject to the supervision of the public service commission. *State ex rel. The City of Wheeling* v. *Renick*, 145 W. Va. 640, 116 S. E. 2d 763; *The Chesapeake and Potomac Telephone Company of West Virginia* v. *The City of Morgantown*, 144 W. Va. 149, 107 S. E. 2d 489; *Lockard* v. *City of Salem*, 127 W. Va. 237, 32 S. E. 2d 568; *City of Mullens* v. *Union Power Company*, 122 W. Va. 179, 7 S. E. 2d 870; *City of Benwood* v. *Public Service Commission*, 75 W. Va. 127, 83 S. E. 295, L.R.A. 1915C, 261. The possession and the exercise of jurisdiction by the public service commission to regulate and control public utilities in this State, including the sewer system constructed, owned and operated by the City of Morgantown, is in furtherance of the policy of the law of this State. With respect to the jurisdiction of the public service commission to supervise and regulate the services to be furnished by a public utility this Court, in the recent case of *State ex rel. The City of Wheeling* v. *Renick*, 145 W. Va. 640, 116 S. E. 2d 763, citing the case of *United Fuel Gas Company* v. *Public Service Commission*, 103 W. Va. 306, 138 S. E. 388, 52 A.L.R. 1104, said that the only limitation upon the power and the authority of the public service commission to control the facilities, charges and services of all public service corporations and to hear the complaints of persons entitled to such service is that "the requirements shall not be contrary to law and that they shall be 'just and fair,' 'just and reasonable,' and 'just and proper.' "

In vesting the public service commission with the jurisdiction and the power to regulate and control the public

utilities in this State, the Legislature has authorized it to exercise the predominant power of the State with respect to such utilities, in order that the facilities, charges and services of all public service corporations shall not be contrary to law and that they shall be just and fair, just and reasonable, and just and proper. In considering and giving effect to the provisions of Section 1, Article 2, Chapter 24, Code, 1931, as amended, and Section 1, Article 3, Chapter 24, Code, 1931, in the recent case of *The Chesapeake and Potomac Telephone Company of West Virginia* v. *The City of Morgantown*, 144 W. Va. 149, 107 S. E. 2d 489, this Court said "These and related statutes disclose a clear legislative policy, for the public good, to place the regulation of public utilities under State control. Such statutes are paramount to rights given to the city, by charter and by general statute, reasonably to regulate the use of its streets."; and in that case the opinion contains this quotation from the opinion in *Brackman's Incorporated* v. *City of Huntington*, 126 W. Va. 21, 27 S. E. 2d 71: "Attached to every statute, every charter, every ordinance or resolution affecting, or adopted by, a municipality, is the implied condition that the same must yield to the predominant power of the State, when that power has been exercised. To hold otherwise would lead to serious confusion, and ofttimes absurd results."

In *The City of Huntington* v. *State Water Commission*, 137 W. Va. 786, 73 S. E. 2d 833, involving public health as a matter of statewide rather than local or municipal interest or concern, this Court held that in the regulation of public health the power of the State is supreme. In the opinion in that case this Court used this pertinent language: "In all matters which are not purely local the power of the state is supreme. 2 McQuillin, Municipal Corporations, Third Edition, Chapter 4, Section 4.84; *State ex rel. Daly* v. *City of Toledo*, 142 Ohio St. 123, 50 N. E. 2d 338. In *Brackman's Incorporated* v. *City of Huntington*, 126 W. Va. 21, 21 S. E. 2d 71, with reference to municipal charters, ordinances and resolutions, this Court said: 'Attached to every statute, every charter, every ordinance or resolution affecting, or adopted by, a municipality, is the implied condition that the same must yield to the predominant power of the State,

when that power has been exercised.' 'A statute involving state affairs controls conflicting provisions in a city charter without regard to whether the statute antedates the charter or was enacted after the adoption of the charter.' 2 McQuillin, Municipal Corporations, Third Edition, Chapter 4, Section 4.84."

Under the foregoing authorities, the requirement of Section 20, Article 4, Chapter 8, Code, 1931, as amended, that an ordinance imposing rates and charges for sewerage and sewage disposal service, to be effective, when protested by the specified percentage of voters, should be ratified by the voters of the municipality at an election held for that purpose, must yield to the paramount power of the State, vested in the public service commission by the applicable statutory provisions of Articles 1, 2 and 3, Chapter 24, Code, 1931, as amended, to establish and promulgate such rates and charges; and this Court now so holds. "There is no such thing as a vested right in a municipality, as against the exercise of the sovereign power of the State." *Baier* v. *The City of St. Albans*, 128 W. Va. 630, 39 S. E. 2d 145.

This Court held in *State ex rel. The City of Wheeling* v. *Renick*, 145 W. Va. 640, 116 S. E. 2d 763, that the provisions of Article 13, Chapter 16, Code, 1931, as amended, authorizing and empowering a municipal corporation in this State to own, construct, equip, operate and maintain sewer systems, to place the construction, operation and management of such systems under the supervision and control of a sanitary board appointed by the governing body of such municipal corporation and to authorize such board to operate, manage and control them, and to order and complete any extensions or betterment that the board may deem expedient, did not divest the public service commission of the jurisdiction conferred upon it by Section 1, Article 2, Chapter 24, Code, 1931, as amended, to supervise and regulate municipally owned and operated sewer systems. Under the holding in that case the provisions of Section 20, Article 4, Chapter 8, Code, 1931, as amended, do not divest the public service commission of the jurisdiction conferred upon it by Section 1, Article 2, Chapter 24, Code, 1931, as amended, to

supervise and regulate the sewer system of the City of Morgantown.

Notwithstanding the refusal of the City of Morgantown to hold an election to enable the voters to ratify the ordinance enacted September 20, 1960, the ordinance constituted a tariff or schedule of rates and charges which, when filed with the public service commission, enabled the commission, under the provisions of Section 3, Article 2, Chapter 24, Code, 1931, to establish and promulgate valid and effective rates and charges for the service furnished by the sewer system owned and operated by the City of Morgantown. In that respect the action taken was materially different from that which occurred in the case of *Randall Gas Company* v. *Star Glass Company*, 78 W. Va. 252, 88 S. E. 840, cited and relied upon by the petitioner. In the *Randall* case, though the commission granted permission to the utility to increase its rates, the applicant did not file the required schedule of the new rates; and as the commission had not prescribed or established, but had merely permitted, the new rates the applicant was not entitled to recover the difference between the prior contract rate and the new rate for the gas furnished the consumer. That case is distinguishable from the instant proceeding for the reason that in the *Randall* case no tariff or schedule was ever filed with the public service commission whereas in the case at bar the tariff or schedule in the form of copies of the ordinance was filed with the public service commission, and its order of December 30, 1960, establishing and promulgating the rates, was based upon the tariff or schedule filed with the commission.

Inasmuch as refusal by the voters of the City of Morgantown to ratify the ordinance at any election that might be held could not in any way affect, nullify or supersede the rates and charges established by the final unreviewed order of the public service commission of December 30, 1960, any election held after the entry of such order would be of no force or effect but would be entirely fruitless and utterly unavailing. For that reason a writ of mandamus to require the City of Morgantown to hold such useless election should

not be awarded. It is well settled by many decisions of this Court that a writ of mandamus will not be issued in any case when it is unnecessary or when, if used, it would prove unavailing, fruitless or nugatory. *Gerwig* v. *The Baltimore and Ohio Railroad Company,* 141 W. Va. 139, 89 S. E. 2d 217; *Brannon* v. *Perkey,* 127 W. Va. 103, 31 S. E. 2d 898, 158 A.L.R. 631; *State ex rel. The City of Huntington* v. *Heffley,* 127 W. Va. 254, 32 S. E. 2d 456; *Taylor* v. *Board of Canvassers of Mineral County,* 119 W. Va. 378, 193 S. E. 575; *Cantrell* v. *Board of Education of Lee District,* 107 W. Va. 362, 148 S. E. 320; *Pardue* v. *County Court of Lincoln County,* 105 W. Va. 235, 141 S. E. 874; *State ex rel. Johnson* v. *Given,* 102 W. Va. 703, 136 S. E. 772; *State ex rel. Ryan* v. *Miller,* 82 W. Va. 490, 96 S. E. 791; *West Virginia National Bank* v. *Dunkle,* 65 W. Va. 210, 64 S. E. 531; *Hawkins* v. *Bare and Carter,* 63 W. Va. 431, 60 S. E. 391; *Hall* v. *Staunton,* 55 W. Va. 684, 47 S. E. 265; *State ex rel. Matheny* v. *County Court of Wyoming County,* 47 W. Va. 672, 35 S. E. 959; 12 Michie's Jurisprudence, Mandamus, Section 8.

The denial of the writ which the petitioner seeks in this proceeding does not deprive him of his right to question the propriety of the rates and charges set forth in the ordinance and established by the public service commission by its order of December 30, 1960. If such rates and charges should be considered improper for any valid reason they may be challenged by the petitioner, or any other user of the sewerage service, by complaint in a proper proceeding before the public service commission in the manner provided by law.

The judgment of the circuit court, which dismissed this proceeding, is affirmed.

*Affirmed.*